UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| McKAYLA O'DAIR, ) | |
| ) | |
| Plaintiff, ) | CASE NO. C05-131-TSZ |
| ) | |
| v. ) | REPORT AND |
| ) | RECOMMENDATION |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

Plaintiff McKayla O'Dair appeals to the District Court from a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. For the reasons set forth below, it is recommended that the Commissioner's decision be AFFIRMED.

I. PROCEDURAL HISTORY

On August 24, 2001, plaintiff filed for SSI, alleging that she became disabled on August 1, 2001, due to gluten allergy, bipolar disorder, attention deficit hyperactivity disorder, arthritis in elbows, knees, back, ankles, and neck, posttraumatic stress disorder, and sleep disturbance. Tr. 14, 55-59. Plaintiff's application was denied initially and on reconsideration. Tr. 33, 38. On September 16, 2002, plaintiff timely requested an administrative hearing. Tr. 41. On May 15, 2003, Administrative Law Judge ("ALJ") Cheri L. Filion held a hearing and heard testimony from plaintiff.

REPORT AND RECOMMENDATION
PAGE - 1

Tr. 353-94. On November 4, 2003, the ALJ issued a written decision denying plaintiff's claim. Tr. 14-25. Plaintiff appealed the ALJ's decision to the Appeals Council, which declined to review plaintiff's claim. Tr. 5-8. Plaintiff appealed this final decision of the Commissioner to this Court.

## II. THE PARTIES' POSITIONS

Plaintiff requests that the Court remand this case for further proceedings to correct the ALJ's legal errors. Plaintiff argues that the ALJ erred by: (1) improperly relying on the Medical-Vocational Guidelines at step five; (2) failing to give proper weight to certain medical evidence; (3) failing to find plaintiff's physical impairments severe; and (4) failing to properly assess plaintiff's credibility. The Commissioner asserts that the ALJ's decision is supported by substantial evidence and free of legal error.

## III. STANDARD OF REVIEW

The court may set aside the Commissioner's denial of social security disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion which must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

## IV. EVALUATING DISABILITY

The claimant bears the burden of proving that he is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be

1  expected to result in death, or which has lasted or can be expected to last for a continuous period
2  of not less than twelve months.  42 U.S.C. § 423 (d)(1)(A).

3        The Social Security regulations set out a five-step sequential evaluation process for
4  determining whether claimant is disabled within the meaning of the Social Security Act.  *See* 20
5  C.F.R. § 416.920.  At step one, the claimant must establish that he or she is not engaging in any
6  substantial gainful activity.  20 C.F.R. §§ 404.1520(b), 416.920(b).  At step two, the claimant must
7  establish that he or she has one or more medically severe impairments or combination of
8  impairments.  If the claimant does not have a "severe" impairment, he or she is not disabled.  *Id.* at
9  § (c).  At step three, the Commissioner will determine whether the claimant's impairment meets or
10 equals any of the listed impairments described in the regulations.  A claimant who meets one of the
11 listings is disabled.  *See id.* at § (d).

12       At step four, if the claimant's impairments do not meet or equal one of the impairments listed
13 in the regulations, the Commissioner must assess the claimant's residual functional capacity and the
14 physical and mental demands of the claimant's past relevant work.  *Id.* at § (e).  If the claimant is not
15 able to perform his or her past relevant work, the burden shifts to the Commissioner at step five to
16 show that the claimant can perform some other work that exists in significant numbers in the national
17 economy, taking into consideration the claimant's residual functional capacity, age, education, and
18 work experience.  *Id.* at § (f); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).  If the
19 Commissioner finds the claimant is unable to perform other work, then the claimant is found
20 disabled.

21       V.  <u>SUMMARY OF THE RECORD EVIDENCE</u>

22       Plaintiff was 41-years-old on the day of her hearing, and has a high school education.  Tr.
23 14, 56.  Plaintiff has worked only sporadically temporarily as a security guard and general laborer.
24 Tr. 73, 364-67.

Because the parties have adequately summarized the record in their briefing, the Court will not summarize the record here. Relevant evidence will be incorporated into the discussion.

## VI. THE ALJ'S DECISION

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since her alleged disability onset date, August 1, 2001. Tr. 15, 24. At step two, the ALJ found that plaintiff had no severe physical impairments, but had severe mental impairments of PTSD and dysthymia. Tr. 21, 24. At step three, the ALJ found that plaintiff's impairments did not meet or equal the requirements of a listed impairment. *Id.* The ALJ determined that plaintiff has the residual functional capacity ("RFC") to perform simple, repetitive tasks that do not involve working closely with others or the general public. Tr. 23, 25. She also determined that plaintiff has no exertional limitations. *Id.* At step four, the ALJ found that plaintiff had no past relevant work. *Id.* At step five, the ALJ found that plaintiff was not significantly compromised by her non-exertional limitations, and relied upon the Medical-Vocational Guidelines as a framework for her decision that there are a significant number of jobs in the national economy that plaintiff can perform given her age, education, past relevant work experience, and RFC. Tr. 24, 25. Thus, the ALJ concluded that plaintiff was not disabled as defined in the Social Security Act.

## VII. DISCUSSION

A. <u>The ALJ Properly Relied Upon the Medical-Vocational Guidelines</u>.

At step five, the ALJ relied on the Medical-Vocational Guidelines ("grids") at 20 C.F.R. pt. 404, subpt. P, app. 2., to determine that plaintiff was capable of performing other work in the national economy. Specifically, the ALJ relied on Medical-Vocational Rule 204.00, which directed a finding of not disabled in light of plaintiff's age, education, work experience, and ability to perform work at all levels. Tr. 25. Plaintiff argues that the ALJ erred at step five because she did not call a vocational expert ("VE") to testify. Plaintiff argues that a VE was needed because plaintiff's

limitations included non-exertional limitations that are not included in the grids. The regulations do not, however, preclude the use of the grids when a non-exertional limitation is alleged. *Tackett v. Apfel*, 180 F.3d 1094, 1102 (9th Cir. 1999); *see also Razey v. Heckler*, 785 F.2d 1426, 1430 (9th Cir. 1986). Rather, an ALJ may rely on the grids where they "*completely and accurately* represent a claimant's limitations. . . . In other words, a claimant must be able to perform the *full range* of jobs in a given category." *Tackett*, 180 F.3d at 1101 (9th Cir. 1999). "The ALJ should first determine if a claimant's nonexertional impairments significantly limit the range of work permitted by her exertional limitations." *Id.* at 1102.

Here, the ALJ specifically referenced the grids and reasonably determined that plaintiff's non-exertional limitations did not significantly impact the range of unskilled work she could perform. Tr. 24-25. The ALJ noted that SSR 85-15[1] states that simple, unskilled work involves working with things rather than people, which the ALJ found consistent with plaintiff's mild to moderate limitations in concentration and working with others. Tr. 24. Because plaintiff's non-exertional limitations did not significantly limit the range of unskilled work she could perform, the ALJ properly relied on the grids in finding her not disabled.

Plaintiff further asserts that the ALJ should have obtained VE testimony because the ALJ found that plaintiff retained the RFC to perform "simple, repetitive tasks that do not involve working closely with others or the general public." Tr. 23. Plaintiff asserts that because "repetitive" is not part of the definition of "unskilled," it is thus "an additional limitation above and beyond a limitation to unskilled work." (Dkt. 12 at 7). 20 C.F.R. § 416.968(a) defines unskilled work as follows:

> Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and off bearing (that is, placing or removing materials from

---

[1] Social Security Ruling 85-15 discusses the Medical-Vocational Rules as a framework for evaluating solely nonexertional impairments.

REPORT AND RECOMMENDATION
PAGE - 5

machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed.  A person does not gain work skills by doing unskilled jobs.

Simple, repetitive tasks of an unskilled nature are certainly encompassed in the definition of unskilled work.  Accordingly, because the regulations allow the use of the grids under these circumstances, the ALJ did not err at step five by relying on the grids to determine plaintiff's ability to perform other work in the national economy.

### B. The ALJ Properly Evaluated the Medical Evidence.

Plaintiff argues that the ALJ improperly evaluated the medical evidence, including the opinions of non-examining State agency psychologists, Charles Regets, Ph.D., and Janis Lewis, Ph.D., and the opinions of examining psychiatrists, Donna Mills, M.D., and Anselm A. Parlatore, M.D.  Plaintiff argues that the ALJ failed to account for all of the limitations discussed by the State agency psychologists, or give legally sufficient reasons for rejecting the opinions of the examining psychiatrists.

#### 1. Non-Examining State Agency Psychologists

The Plaintiff claims that the ALJ erred by omitting four particular limitations noted by the State agency psychologists in "Section I, Summary Conclusions," of their mental residual functional capacity assessment. Tr. 175-76.  However, as the Commissioner points out, the ALJ properly relied on "Section III, Functional Capacity Assessment," which contains the narrative explanation section used for recording the mental RFC determination, not Section I.  The Program Operations Manual System [2] ("POMS") § DI 24510.060(b)(2) unambiguously explains that "**Section I is merely a worksheet** to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and     **does not contain the RFC assessment**."

---

[2]The Program Operations Manual System is the manual used by the Social Security Administration.

POMS DI 24510.060(B)(2).  By contrast, "Section III – Functional Capacity Assessment, is for recording the mental RFC determination.  It is in this section that the actual mental RFC assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could not be performed in work settings."  POMS DI 24510.060(B)(4)(a).  Thus, the ALJ is specifically directed to Section III, not Section I, to assess a claimant's mental residual functional capacity.  While POMS is not binding on the Court, it is persuasive authority of the agency's own interpretation of the Social Security Regulations.  *See Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385, 123 S. Ct. 1017, 154 L. Ed. 2d 972 (2003)(noting that while POMS "are not products of formal rulemaking, they nevertheless warrant respect"); *see also Hermes v. Secretary of Health and Human Servs.*, 926 F.2d 789, 791 n.1 (9th Cir. 1991).

Contrary to plaintiff's contention, the ALJ properly and thoroughly considered all of the limitations identified by the State agency psychologists in their Mental Functional Capacity Assessment. Tr. 17, 177.  Accordingly, plaintiff's assertion of error is without merit.

### 2. Examining Psychiatrists

To disregard the uncontradicted opinion of an examining physician or a treating physician, an ALJ must provide clear and convincing reasons.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  If contradicted by another physician, an examining or treating physician's opinion may be rejected only for specific and legitimate reasons supported by substantial evidence in the record.  *Id.* at 830-31.  Where a material conflict in the evidence is presented, only the ALJ may resolve it.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995).

#### a. *Dr. Mills*

As noted above, plaintiff argues that the ALJ erroneously rejected the opinion of examining

psychiatrist Dr. Mills, who, on January 11, 2001, determined that plaintiff had a global assessment of function ("GAF") of 50, "denoting serious symptoms." Tr. 171. The Commissioner responds that Dr. Mills' January 2001 assessment, eight months prior to plaintiff's alleged disability onset date, did not require further analysis because it was not probative to the period under review by the ALJ.

The ALJ "need not discuss all evidence presented[;] . . . [r]ather, [the ALJ need only] explain why significant probative evidence has been rejected." *See, e.g., Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)(finding controverted medical evidence to be neither significant nor probative). Here, Dr. Mills' psychiatric evaluation was contradicted by the state agency psychologists' evaluation finding plaintiff capable of simple repetitive activity on a persistent basis. Tr. 17, 177. In addition, Dr. Parlatore completed subsequent psychiatric evaluations which the ALJ properly rejected as based on plaintiff's unreliable self report. Accordingly, Dr. Mills' evaluation which has been controverted and overtaken by intervening mental evaluations was not significant or probative, and therefore, did not require further analysis.

      b. *Dr. Parlatore*

Plaintiff also argues that the ALJ failed to provide legally sufficient reasons for rejecting the four psychiatric evaluations presented by examining psychiatrist Dr. Parlatore. As noted by the Commissioner, the ALJ rejected Dr. Parlatore's evaluations because they were based too heavily on plaintiff's unreliable self-reporting. Tr. 23.

> The claimant's counselor and Dr. Parlatore have opined that the claimant is disabled. Dr. Parlatore does not treat the claimant and only sees the claimant to complete DSHS evaluations for the claimant to attain general assistance benefits. Additionally, he relied heavily on self report, and her self reports being unreliable, the conclusions that flow there from are also not reliable. The claimant's counselor stated that the claimant lacked the ability to take a bus or taxi to go to a job, but I note that the claimant is able to drive, so there is no real reason for her to take a bus or a taxi. She said that the claimant's attendance would be poor due to health issues and anxiety, but as noted above, I do not find that the claimant has a severe physical impairment. She said that the claimant had problems with performance adjustment due to attention deficit hyperactivity disorder,

REPORT AND RECOMMENDATION
PAGE - 8

> but there is no basis for this diagnosis in the record and in any event the claimant testified that she could work around attention deficit hyperactivity disorder. The records regarding ADHD may be present in Arizona, but the claimant has not provided this evidence. The counselor said that the claimant is not involved in social activities, but as noted above, there are many references to social activities. She has a sexual partner as recently as March 2003. She was regularly attending church until 2003, and has at least one friend close enough to allow her to borrow their car. The opinions from these providers that the claimant is disabled are not supported by the claimant's activities and do not take into consideration the fact that the claimant is less than honest in reporting her history and her symptoms.

Tr. 23.

Plaintiff asserts that "[u]nder the regulations, a psychiatrists observations are objective <u>signs</u>." (Dkt. # 12 at 14, citing 20 C.F.R. § 416.928(b)(emphasis added). Again, plaintiff misinterprets the regulations. The regulations describe "<u>symptoms</u>" as a claimant's "own description" of her mental impairment, and provides that such "statements . . . alone . . . are not enough to establish that there is a physical or mental impairment." 20 C.F.R. § 416.928(a). The regulations then explain that psychiatric <u>signs</u> are "anatomical, physiological, or psychological abnormalities which can be observed, *apart from [the claimant's] statements (<u>symptoms</u>)*." 20 C.F.R. § 416.928(b)(emphasis added). Signs "must also be shown by observable facts that can be medically described and evaluated." *Id.* Dr. Parlatore's evaluations indicate that his assessment was based on plaintiff's own self-reporting ("symptoms") rather than on "observable facts that can be medically described and evaluated" ("signs"). Accordingly, the Court finds the ALJ provided specific and legitimate reasons supported by substantial evidence in the record for rejecting the opinions of Dr. Parlatore.[3]

---

[3] Plaintiff asserts that the ALJ's finding that there was "no evidence" that plaintiff had more than a mild limitation in concentration, persistence, or pace, is not supported by substantial evidence. (Dkt. #12 at 14). Plaintiff has misinterpreted the ALJ's decision. The ALJ stated, "As a result of this cumulative evidence, I find that claimant has at most moderate limitations in activities of daily living and social functioning. There is no evidence to suggest more than mild limitations in concentration, persistence or pace and there is no evidence to suggest an episode of

REPORT AND RECOMMENDATION
PAGE - 9

1    C. <u>The ALJ Properly Determined that Plaintiff Had No Severe Physical Impairments</u>.

2    At step two, the ALJ found that plaintiff had no severe physical impairments. Tr. 20-21. Plaintiff argues that the ALJ erroneously failed to evaluate the opinion of the non-examining state agency physician Dr. Grant, and erroneously evaluated plaintiff's arthritis, as well as other diagnoses in the record. The Commissioner responds that plaintiff failed to meet her burden to show severe physical impairments.

Step two of the sequential evaluation process requires a claimant to prove that she has a severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment is severe if it significantly limits the plaintiff's ability to perform basis work activities.[4] 20 C.F.R. §§ 404.1521(a), 416.921(a). When an impairment or combination of impairments consist of no more than a slight abnormality that have only a minimal effect on an individual's ability to work, a finding of non-severe is appropriate. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also* SSR 96-3p, at *1. Hence, step two acts as a "*de minimis* screening device to dispose of groundless claims." *Id*. In this case, the ALJ's decision to find plaintiff's physical impairments non-severe is supported by substantial evidence in the record.

In November 2001, non-examining state agency physician Richard E. Grant, M.D., concluded that plaintiff was limited to light work due to mild scoliosis (confirmed by x-ray) and Prurigo nodularis (dermatitis confirmed by biopsy). Tr. 153-54. The ALJ properly addressed Dr.

---

decompensation." Tr. 21. Contrary to plaintiff's assertion, the ALJ's finding was based on her conclusion that the cumulative evidence, including the medical record and plaintiff's testimony, did not support more than mild limitations in concentration, persistence or pace. As plaintiff has misinterpreted the ALJ's decision, the Court does not address this argument further.

[4]Basic work activities include the abilities and aptitudes necessary to do most jobs including walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, understanding, carrying out and remembering simple instructions, and dealing with changes in a routine work setting. *See* 20 C.F.R. §§ 404.1521(b), 416.921(b).

REPORT AND RECOMMENDATION
PAGE - 10

Grant's assessment, finding that there was no medical evidence in the record that plaintiff's mild scoliosis was severe and was not accompanied by any complaints of back pain. Further, plaintiff's dermatitis (purigo nodularis) had resolved through treatment. Tr. 20-21. The ALJ thus properly concluded that plaintiff's mild scoliosis and dermatitis were not severe.

The ALJ also considered plaintiff's allegations of joint pain and arthritis, but found no diagnosis of arthritis in the record. Tr. 20. Plaintiff cites to two treatment notes from treating physician Nathan Morrow, M.D. Tr. 124, 270. However, Dr. Morrow's treatment note from August 2001 includes only a general reference to arthritis, and does not include any diagnosis or discussion for the basis of that reference. Tr. 124. Dr. Morrow's treatment note from November 2002 states only that plaintiff was seeking pain medications for "miscellaneous aches and pains typically joint pains," but that she "doesn't have any specific complaints." Tr. 270. Thus, the ALJ's properly determined that plaintiff's joint pains and arthritis were not severe.

Plaintiff further asserts that it is implausible that plaintiff's combined physical impairments did not constitute a severe physical impairment. The Court finds the ALJ's determination that plaintiff's alleged impairments individually and commutatively were not severe is based on a thorough analysis of the record and supported by substantial evidence.

> I do not find that the claimant has a sever physical impairment. She has had surgical correction of her deviated septum. A hysterectomy corrected her excessive bleeding that was causing her anemia. Her low hematocrit has resolved. She has mild scoliosis, but rarely mentions any back complaints. She also reports migraines, however, there is no indication that these would significantly impact the claimant's ability to perform work related activity and there is a lot of evidence that her headache complaints are related to drug seeking behavior. The claimant reports joint pains and arthritis, but there is no diagnosis of arthritis in the record. The evidence shows that the claimant has engaged in significant drug seeking behavior, and one of the three types of addictive medications that the claimant is on is opiate pain medication. She reports pain in an attempt to obtain medication, but there is no objective evidence of an impairment which would cause the claimant significant limitations. The claimant testified that her physical impairments did

> not prevent her from working.[5] She also did not mention any pain medication among her medications. The claimant's gluten allergy, alleged when she filed for disability, is rarely mentioned in the record. It is not verified and there is no indication that it causes the claimant any limitations in her ability to perform work related activity. Her skin disorder seems to have responded to treatment, as there are no recent records documenting a significant problem.

Tr. 20-21. The ALJ appropriately found that plaintiff failed to meet her burden of proof.

### D. The ALJ Properly Evaluated Plaintiff's Credibility.

Plaintiff next contends that the ALJ erred in assessing her credibility. Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *see also Thomas*, 278 F.3d at 958-59. In finding a social security claimant's testimony unreliable, an ALJ must render a credibility determination with sufficiently specific findings, supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). "If the ALJ's

---

[5]ALJ: So let's talk about the reasons why you think you are unable to work. And I'd like you to start with what you consider to be the most significant problem that's preventing you from working.

Plaintiff: I have horrible panic attacks and I'm terribly fearful of people, situations, going out. It was very hard for me to get here, for me to come here, for me to keep my attention span long enough to hear your directions. I do have physical ailments, that those are not things that I would consider prevent me from working. It's emotional things. Tr. 368.

credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Thomas*, 278 F.3d at 959.

In this case, the ALJ articulated adequate reasons for finding petitioner not credible. The ALJ assessed plaintiff's credibility as follows:

> The medical record indicates that the claimant is repeatedly exaggerating her symptoms. At the hearing she said she only left her home three times a month. That would cover her two counseling sessions and her psychiatric session, but no physical evaluations and no shopping, yet she also engages in these activities. She presents herself to her doctor's office and the emergency room with various complaints that have been described by providers as drug seeking behavior for narcotic medications. In addition she is still regularly prescribed benzodiazepines for anxiety and stimulants for attention deficit disorder (ADHD), even though there is no specific record of any attention deficit diagnosis. Dr. Parlatore specifically doubted the diagnosis of ADHD. The claimant has not obtained any of the records from Arizona which potentially would substantiate some her complaints because she was afraid that her ex-husband could then use this information to track her down, even though she said that he ex-husband is now in the area and knows that she is in Bellingham. Thus the reason for withholdingthese records no longer exists. She reports regularly fainting, although the only documented episode of this apparently occurred in December 2002, when she reported injuring her shoulder in a fall. I note that she later embellished this event, reporting that she fractured her shoulder when she fell, even though there was no evidence of a fracture. Laboratory reports of urinalysis tests were positive for marijuana use, but she has never reported this use to her providers. She has reported having three college degrees, but said at the hearing that she had only attended a few classes. She reported a history of cervical cancer, but there was no evidence of this upon physical examination. Her extraordinary exaggeration of symptoms, events, and disorders, calls her credibility into questions. Additionally, she has not been forthcoming to providers about marijuana use. This is especially significant when combined with her doctor's concerns about excessive narcotic drug use. She has not provided all of her records, claiming that ordering these records would enable her ex-husband to find her even though, according to her, he already has found her. Finally, I note that the claimant has a very poor work record indicating low motivation to work in the past when she did not have the complaint now alleged or certainly not at the level now complained of. Her motivation for applying for these benefits now appears more related to her historical aversion to work than to true disability related reasons. I find that she is not credible, and nay thing that she has reported to the State Disability Determination Services, to me at the hearing, and to her doctors is unreliable.

Tr. 22. In assessing plaintiff's activities of daily living and social functioning, the ALJ also found plaintiff's reports that she is socially isolated and unable to function outside the house not credible. For example, the ALJ noted that plaintiff has a boyfriend and was engaging in sexual activity. Tr.

REPORT AND RECOMMENDATION
PAGE - 13

21. The ALJ also noted that plaintiff drives between Bellingham and Seattle with a radar detector, calling into doubt plaintiff's claims of severe anxiety. *Id.* She also had a laptop in the car, indicating an ability not only to function but also to work outside the home. *Id.* The ALJ noted that plaintiff borrowed a car to drive to her hearing, suggesting that she has a close enough relationship with someone that would loan her a car. Finally, the ALJ noted that plaintiff is capable of going to her therapy or psychiatric appointments and to shop. Contrary to plaintiff's argument, the ALJ was permitted to consider plaintiff's daily activities and social functioning in her credibility analysis. See, e.g., Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005)(holding that "if a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities"). Although plaintiff may interpret her activities more favorably to her, the ALJ's interpretation was rational, and the Court must "uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation." *Magallenes*, 881 F.2d at 750.

The ALJ pointed to specific evidence in the record that contradicted plaintiff's purported limitations regarding her abilities as set forth above. The ALJ's credibility findings regarding plaintiff in this case are sufficiently specific to conclude that they are supported by substantial evidence, and should not be disturbed.

## VIII. CONCLUSION

For the foregoing reasons, I recommend that the final decision of the Commissioner be affirmed and that the appeal be dismissed. A proposed Order accompanies this Report and Recommendation.

DATED this 24th day of January, 2006.

MONICA J. BENTON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 14